1 | M. Jonathan Hayes (Bar No. 90388)
**Law Offices of M. Jonathan Hayes**
2 | 9700 Reseda Boulevard, Suite 201
Northridge, California 91324
3 | Telephone: (818) 882-5600
Facsimile: (818) 882-5610
4 | jhayes@polarisnet.net

5 | Attorneys for Debtors
Michael and Denise Freed

6

7

8 | UNITED STATES BANKRUPTCY COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | LOS ANGELES DIVISION

11

12 | In re                                              )  Case No. 2:09-bk-33387-SB
                                                      )
13 | MICHAEL FREED and DENISE FREED,   )  Chapter 11
as Individuals,                                   )
14 |                                                     )
                                                      )
15 |          Debtors.                               )  **DEBTORS' FIRST AMENDED
                                                      )  DISCLOSURE STATEMENT
16 |                                                     )  DESCRIBING DEBTORS' FIRST
                                                      )  AMENDED CHAPTER 11 PLAN**
17 |                                                     )
                                                      )
18 |                                                     )  **Disclosure Statement Hearing**
                                                      )
19 |                                                     )  Date: March 23, 2010
                                                      )  Time: 2:00 p.m.
20 |                                                     )  Ctrm: 1575
                                                      )          255 East Temple Street
21 |                                                     )          Los Angeles, CA 90012
                                                      )
22 |                                                     )
                                                      )
23 |                                                     )
24 | ─────────────────────────

25

26

27

28

# Contents

**I. INTRODUCTION**.................................................................................**5**

    A.  PURPOSE OF THIS DOCUMENT ...................................................5

    B.  Deadlines for Voting and Objecting; Date of Plan Confirmation
        Hearing ..................................................................................6

    C.  TIME AND PLACE OF THE CONFIRMATION HEARING........................7

    D.  Deadline For Voting For or Against the Plan.....................................7

    E.  Deadline For Objecting to the Confirmation of the Plan ..................7

    F.  Identity of Person to Contact for More Information Regarding the
        Plan ......................................................................................7

    Disclaimer.....................................................................................7

    G.  Important Notices and Cautionary Statements .................................8

**II. BACKGROUND** .................................................................................**8**

    A.  Description and History of the Debtors' Business ...........................8

    B.  Principals/Affiliates of Debtors's Business ......................................9

    C.  Management of the Debtors Before and After the Bankruptcy ......................10

    D.  Events Leading to Chapter 11 Filing ............................................10

    E.  Significant Events During the Bankruptcy ....................................10

           *1. Bankruptcy Proceedings*.......................................................10

           *2.  Other Legal Proceedings*......................................................11

           *3.  Claims Objections* ...............................................................11

           *4.  Adversary Proceedings*.........................................................11

           There are no adversary proceedings pending and the Debtors
               do not anticipate any.......................................................11

           *5.  Actual and Projected Recovery of Preferential or
               Fraudulent Transfers*........................................................11

            *6.  Procedures Implemented to Resolve Financial Problems* ...................11

**III.  SUMMARY OF THE PLAN OF REORGANIZATION**...................................**12**

    A.  GENERAL OVERVIEW ............................................................12

LAW OFFICES
M. Jonathan Hayes

B.  UNCLASSIFIED CLAIMS ............................................................................ 12

C.  ADMINISTRATIVE EXPENSES ................................................................. 13

D.  PRIORITY TAX CLAIMS ............................................................................ 13

E.  CLASSIFIED CLAIMS AND INTERESTS .................................................. 14

 **Class 1A -** *Secured Claim of IndyMac Mortgage Services* ....................... 14

 **Class 1B -** *Secured Claim of Bank of America* ............................................ 15

 **Class 1C -** *Secured Claim of Bank of America* ........................................... 15

 **Class 1D -** *Secured Claim of Bank of America* ........................................... 15

 **Class 1E -** *Secured Claim of Bank of America* ........................................... 16

 **Class 1F -** *Secured Claim of IndyMac Bank/Faslo Solutions* .................... 16

 **Class 2 -** *Secured Claim of Ford Credit* ..................................................... 17

 **Class 3** – *Priority Unsecured Claims* ........................................................... 17

 **Class 4** – *Unsecured Claims* ........................................................................ 17

 Class of Interest Holders .................................................................................. 18

 **Class 5** – Debtors ........................................................................................... 18

F.  Means of Performing the Plan ........................................................................ 18

 *1.   Funding for the Plan* ................................................................................ 18

 *3.   Disbursing Agent* ..................................................................................... 18

 *4.   Distributions* ............................................................................................ 18

G.  RISK FACTORS ........................................................................................... 18

H.  OTHER PROVISIONS OF THE PLAN ....................................................... 19

 1.   Executory Contracts and Unexpired Leases .......................................... 19

2.   Changes in Rates Subject to Regulatory Commission Approval ..................... 20

3.   Retention of Jurisdiction .................................................................................. 20

I.   TAX CONSEQUENCES OF THE PLAN ..................................................... 20

**IV.  CONFIRMATION REQUIREMENTS AND PROCEDURES ........................... 20**

A. WHO MAY VOTE OR OBJECT ................................................................. 21

 *1.   Who May Object to Confirmation of the Plan* ....................................... 21

2. *Who May Vote to Accept/Reject the Plan* .................................. 21

3. *Who is Not Entitled to Vote* .................................................. 22

4. *Who Can Vote in More Than One Class* ................................. 23

5. *Votes Necessary to Confirm the Plan* .................................... 23

6. *Votes Necessary for a Class to Accept the Plan* ....................... 23

7. *Treatment of Non-accepting Classes* ..................................... 23

8. *Request for Confirmation Despite Non-acceptance by Impaired Classes* ........................................................ 24

B.   LIQUIDATION ANALYSIS ............................................. 24

1.  Feasibility .......................................................................... 27

**V. EFFECT OF CONFIRMATION OF PLAN** .................................. **28**

1. Discharge ............................................................................ 28

2.  Revesting of Property in the Debtors ..................................... 28

3.  Modification of Plan ............................................................ 29

4.  Post-Confirmation Employment and Compensation of Reorganized Debtors' Professionals ................................. 29

5.  Post-Confirmation Status Report ........................................... 29

6.  Post-Confirmation Conversion/Dismissal .............................. 29

7.  Final Decree ........................................................................ 30

**SUPPORTING DECLARATION** ........................................................ **31**

**EXHIBIT A - LIST OF ALL ASSETS** ................................................ **32**

**EXHIBIT B – DEBTOR'S PROJECTED DISPOSABLE INCOME** ........ **33**

**EXHIBIT C - LIST OF CREDITORS/CLAIMS** ................................... **34**

**LAW OFFICES**
M. Jonathan Hayes

DEBTORS' FIRST AMENDED
DISCLOSURE STATEMENT

# I.  **INTRODUCTION**

On August 31, 2009, MICHAEL and DENISE FREED, filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), 11 U.S.C. § 101 et seq.  They are hereinafter referred to as the "Debtors."  This document is the Chapter 11 Disclosure Statement.  Chapter 11 allows the Debtors, and under some circumstances, creditors and others parties in interest, to propose a plan of reorganization (the "Plan").  The Plan may provide for the Debtors to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.  The Debtors are the proponents (the "Proponents") of the Plan sent to you in the same envelope as this document.  THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

In summary, this Plan provides for payment to holders of allowed claims.  The timing of Plan payments to particular creditor groups will depend upon their classification under the Plan.  The Effective Date of the Plan shall be the first Business Day, (a) that is 11 calendar days after the Confirmation Date, or (b) at least one Business Day after the Confirmation Date, if the Bankruptcy Court enters an order making Bankruptcy Rule 7062 inapplicable to the proceedings respecting the Confirmation Order or otherwise determining that the Effective Date may occur immediately following confirmation.

# A.  **PURPOSE OF THIS DOCUMENT**

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

**(1)**   **WHO CAN VOTE OR OBJECT;**

**(2)**   **WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what**

**LAW OFFICES**
M. Jonathan Hayes

DEBTORS' FIRST AMENDED
DISCLOSURE STATEMENT

**your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION;**

       **(3)    THE HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY;**

       **(4)    WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN;**

       **(5)    WHAT IS THE EFFECT OF CONFIRMATION;**

       **(6)    WHETHER THIS PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own legal counsel to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement.  If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Code requires a Disclosure Statement to contain "adequate information" concerning the Plan.  The Bankruptcy Court (the "Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. Any party can now solicit votes for or against the Plan.

## B.  DEADLINES FOR VOTING AND OBJECTING; DATE OF PLAN CONFIRMATION HEARING

**THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTORS AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS**

1  CASE.

2

3          ## C.   TIME AND PLACE OF THE CONFIRMATION HEARING

4          The hearing where the Court will determine whether or not to confirm the Plan will

5  take place on ----------------------, 2009, at --:00 AM in Courtroom -, --- 255 East Temple

6  Street, Los Angeles, CA 90012.

7

8          ## D.   DEADLINE FOR VOTING FOR OR AGAINST THE PLAN

9          If you are entitled to vote, it is in your best interest to timely vote on the enclosed

10  ballot and return the ballot to counsel for the Debtors at the following address:

11                              M. Jonathan Hayes
                            9700 Reseda Blvd, Ste 201
12                            Northridge, CA 91324

13          **Your ballot must be received by 5:00 p.m. PST on -------------- or it will not be**

14  **counted**.

15

16          ## E.   DEADLINE FOR OBJECTING TO THE CONFIRMATION OF THE PLAN

17          Objections to the confirmation of the Plan must be filed with the Court and served

18  so that any objections are actually received by counsel for the Debtors by 5:00 p.m. PST

19  on ---------------------------.

20

21          ## F.   IDENTITY OF PERSON TO CONTACT FOR MORE INFORMATION

22                              REGARDING THE PLAN

23          Any interested party desiring further information about the Plan should contact

24  counsel for the Debtors, M. Jonathan Hayes, 9700 Reseda Blvd, Ste 201, Northridge, CA

25  91324, (818) 882-5600 or jhayes@polarisnet.net.

26                              ## DISCLAIMER

27          The financial data relied upon in formulating the Plan is based on the Debtors'

28

DEBTORS' FIRST AMENDED
DISCLOSURE STATEMENT

books and records and historical financial statements. The Debtors represents that the information contained in this Disclosure Statement is true and correct to the Debtors' best knowledge.  The Court has not yet determined whether the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

## G.   IMPORTANT NOTICES AND CAUTIONARY STATEMENTS

The liquidation analysis, estimates and other financial information referenced herein, or attached as exhibits hereto, have been developed by the Debtors with the assistance of their professional advisors.  Although these professional advisors assisted in the preparation of this Disclosure Statement, in doing so such professionals relied upon factual information and assumptions regarding financial, business, and accounting data provided by the Debtors and third parties, all of which information has not been audited. *The Debtors' professional advisors have not independently verified such information and, accordingly, make no representations as to its accuracy.*  Moreover, although reasonable efforts have been made to provide accurate information, the Debtors cannot warrant or represent that the information in this Disclosure Statement, including any and all financial information, is without inaccuracy or omission.

***No entity may rely upon the Plan or this Disclosure Statement, or any of the accompanying exhibits, for any purpose other than to determine whether to vote in favor of or against the Plan.***  Nothing contained in such documents constitutes an admission of any fact or liability by any party, and no such information may be deemed evidence of the tax or other legal effects of the Plan on holders of claims or interests in these cases.

## II.

## BACKGROUND

## A.  DESCRIPTION AND HISTORY OF THE DEBTORS' BUSINESS

The Debtors are husband and wife, married since 1992.  Mr. Freed (hereinafter

"Michael") has been employed by, and is a business partner of, Silva Bridgewater. Michael and his father each own twenty-five percent (25%) of Silva Bridgewater with the owners of Bridgewater making up the remaining fifty percent (50%).  Silva Bridgewater designs restaurants and restaurant equipment for such popular chains such as Baja Fresh and La Salsa.  Michael works as a sales representative.  He receives a monthly salary of $5,769 and no other bonuses or dividends, at least for the foreseeable future.

For the past 20 years Mrs. Freed (hereinafter "Denise") has worked as a successful real estate broker. With the rapid decline of the real estate market, and the economy as a whole, Denise's real estate business quickly deteriorated; her income plummeted from approximately $400,000.00 in 2006, to $120,000.00 in 2007 and finally $60,000 in 2008. In order to secure a steady income Denise took a position as the office manager of the Keller Williams Marina Del Rey/LA office. Mrs. Freed receives a monthly salary of $8,333 and no other bonuses or commission, at least for the foreseeable future.

The Debtors filed their chapter 11 petition to stop a foreclosure by IndyMac Bank on their home at 3784 Wasatch Ave., Los Angeles, CA.  The Debtors would have filed Chapter 13 but they do not qualify as they are over the debt limits.

As is stated above, the Debtors are both employees of different companies.  Denise owns 100% of Denise Freed, Inc. which still receives referral fees from time to time.  She is not actively seeking listings in addition to employment with Keller Williams.

## B.  PRINCIPALS/AFFILIATES OF DEBTORS'S BUSINESS

The Debtors have two affiliates, Denise Freed, Inc. which is wholly owned by the Debtors but otherwise is dormant and Silva Bridgewater.  They have two children, ages 9 and 16.

## C.   MANAGEMENT OF THE DEBTORS BEFORE AND AFTER THE BANKRUPTCY

The management of the Debtors has remained the same before and after the bankruptcy filing.

## D.   EVENTS LEADING TO CHAPTER 11 FILING

The Debtors purchased their home located at 3784 Wasatch Ave., Los Angeles, CA in 1999 for $345,000.  The property is estimated to have a present value of $797,000.  It has approximately $1,053,000 in outstanding mortgages. The Debtors filed this bankruptcy case to save their home from foreclosure.

The Debtors also own four properties in Rochester, New York which they purchased in 2006.  The rent is paid to a property management company.  The Debtors opened a cash collateral bank account and they will deposit any rent proceeds they may receive from the management company.  The properties are all in foreclosure and the Debtors do not intend to try to save them.

## E.  SIGNIFICANT EVENTS DURING THE BANKRUPTCY

### 1. Bankruptcy Proceedings

The Debtors filed this chapter 11 case on August 31, 2009.  On September 14, 2009 they filed a Motion for Further Time to Complete and File Schedules and Statement of Financial Affairs which was granted and the Debtors' were permitted until October 5, 2009 to file their Schedules and Statement of Financial Affairs.

On October 1, 2009 the Debtor's filed a Motion to Employ M. Jonathan Hayes as their general bankruptcy counsel.

On October 15, 2009 the Debtor's filed a "Lam" Motion to determine the secured value of their residence and to avoid the lien of IndyMac Bank and/or Faslo Solutions, LLC.   That motion was granted at a hearing on December 1, 2009 and an Order was

entered on January 4, 2010.

The Debtors attended the meeting of creditors on October 15, 2009. They are in compliance with the rules and regulations of the Office of the United States trustee.

On October 28, 2009, the Court held a Status Conference. At that hearing, the Court ordered that the Bar Date for filing proofs of claim be set for December 30, 2009 and the Debtors have given notice of that date to all creditors. The Status Conference was continued to January 12, 2010 at 2:00 p.m. and again to March 23, 2010.

During this chapter 11 case, the Debtors returned their Porsche Cayenne and Ford Expedition vehicles which were leased by them.

The Debtors stipulated to relief from stay on their four properties in Rochester, New York. An order was entered granting relief from stay on January 13, 2010.

### 2.  Other Legal Proceedings

There were no legal proceedings pending when this chapter 11 case was filed and the Debtors do not anticipate any.

### 3.  Claims Objections

The Debtors have not yet filed objections to any claims and are still investigating the need to do so.

### 4.  Adversary Proceedings

There are no adversary proceedings pending and the Debtors do not anticipate any.

### 5.  Actual and Projected Recovery of Preferential or Fraudulent Transfers

The Debtors have investigated potential claims under Bankruptcy Code sections 547 and 548. Upon completion of such investigation, the Debtors have determined that there are no viable actions for avoidance and recovery of preferential and fraudulent transfers.

### 6.  Procedures Implemented to Resolve Financial Problems

The Debtors' primary financial problems related to the slow-down in Denise's real estate business, which itself was caused by the slow down in the real estate industry.

Denise's real estate business was reduced by 80% in a period of months in 2008.  Denise is now employed by Keller Williams Realty Marina/LA as a team leader in their Marina Del Rey/LA office, and her income is no longer solely dependent on selling homes in the volatile real estate market.

### 7.  Current and Historical Financial Conditions

The identity and fair market value of the estate's assets are listed in **Exhibit A**.  The Debtors' Projected Net Disposable Income is attached hereto as **Exhibit B.**

## III.  SUMMARY OF THE PLAN OF REORGANIZATION
### A.  GENERAL OVERVIEW

As required by the Bankruptcy Code, the Plan separates claims and interests into various categories and classes according to the nature and legal rights associated with such claims and interests.  The Plan designates which classes are impaired and which classes are unimpaired.  The Plan also describes the treatment each class will receive under the Plan.  The Proponent will ask the Bankruptcy Court to confirm this Plan pursuant to 11 U.S.C. § 1129(b) on any impaired classes if any of these classes do not vote to accept the Plan and if the Plan can otherwise be confirmed, notwithstanding the lack of acceptance by the Members, the Proponent may seek to impose the Special Assessment under applicable law**.**

### B.  UNCLASSIFIED CLAIMS

Certain types of claims are not placed into voting classes; instead, they are unclassified.  Holders of unclassified claims not considered impaired and not entitled to vote on the Plan; rather the holders of unclassified, unimpaired claims and interests are automatically entitled to specific treatment provided for them in the Bankruptcy Code.

The following categories of claims are neither classified nor impaired under the Plan and are not entitled to vote on the Plan.

## C.  ADMINISTRATIVE EXPENSES

Administrative expenses are claims for costs or expenses of administering the Debtors' Chapter 11 case that are allowed under Bankruptcy Code Section 507(a)(1).  The Bankruptcy Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.  The following is an estimate of the Section 507(a)(1) administrative claims that will be incurred and unpaid (net of any retainers received) through the Effective Date of the Plan and their treatment under this Plan.

| Name | Amount Owed | Treatment |
|---|---|---|
| M. Jonathan Hayes (Attorney for the Debtors) | $10,000 (estimated). This balance is net of the pre-petition retainer received of $10,000. | Paid in full on the later of (a) Effective Date of Plan or (b) Court approval of requested fees unless the parties agree to other treatment.  Hayes will be paid $500 for the first ten months of the plan. |
| Clerk's Office Fees | $0  (estimated | Paid when due |
| Office of the U.S. Trustee Fees | $325 - $650 per quarter (estimated) | Quarterly fees, as required by 28 U.S.C. § 1930(a)(6), shall be paid until a final decree is entered or the case is dismissed or converted. |
| TOTAL | $10,000 | |

### Court Approval of Fees Required

Requests by professionals for payment of fees and costs are generally subject to review and approval by the Court.  Fees of the Court Clerk and the Office of the United States Trustee are not subject to Court approval and may be paid in the ordinary course of business when due.

### D.  PRIORITY TAX CLAIMS

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8).  The Code requires that each holder of such a

507(a)(8) priority tax claim receive the present value of such claim in deferred cash

payments, over a period not exceeding five years from the petition date.

| Description | Amount Owed | Treatment |
|---|---|---|
| Name =  Internal Revenue Service  Type of tax =  Income Taxes for 2007  Date tax assessed =  August 3, 2009 | $45,933 | The IRS will be paid in full in 51 equal installments of $1,012 beginning May 1, 2010.  Until then the tax owed will accrue interest at the governmental rate.  The payment estimates interest at 5.5%. |
| Name =  Franchise Tax Board  Type of tax =  Income Taxes for 2007  Date tax assessed = na | $18,947.55 | The FTB will be paid in full in 51 equal installments of $417 beginning May 1, 2010.  Until then the tax owed will accrue interest at the governmental rate. |

## E.   CLASSIFIED CLAIMS AND INTERESTS

### Class 1A - *Secured Claim of IndyMac Mortgage Services*

Claim/Collateral: IndyMac Mortgage Services has an estimated claim of $833,000

which is secured by a first priority deed of trust on the Debtor's residence at 3784 Wasatch

Avenue, Los Angeles, California 90066.     The home is valued by the Debtor's at

$797,000.00.

Impaired/Not Impaired: The Class 1A Claim is impaired under the Plan.

Treatment: The obligation of the Debtors to IndyMac Mortgage Services will be paid

according to the contractual terms.  The Debtors' current monthly payment is $4,549

which includes the property taxes.  The Debtors have made the regular monthly payment

each month since this case was filed and will continue to do so until paid in full.  The

arrearage is estimated to be $50,000 which will be paid directly to IndyMac over a five year period in monthly installments of $833.00 beginning on January 1, 2010.

Comments:  Except as modified herein, all terms of the original loan will remain in full force and effect.

### Class 1B - *Secured Claim of Bank of America*

Claim/Collateral: Bank of America has an estimated claim of $35,279.38 which is secured by a first priority deed of trust on the Debtor's rental property at 75-77 Avery Ave., Rochester NY.    The home is valued by the Debtor's at $35,000.00.

Impaired/Not Impaired: The Class 1B Claim is impaired under the Plan.

Treatment: The property is in foreclosure and the Debtors do not intend to try to save it. Bank of America has obtained relief from stay and will foreclose on the property is due course. Class 1B will receive nothing under the plan.  The debtors will return the property to the bank by deed in lieu of foreclosure if the bank chooses.

Comments:

### Class 1C - *Secured Claim of Bank of America*

Claim/Collateral: Bank of America has an estimated claim of $64,179.58 which is secured by a first priority deed of trust on the Debtor's rental property at 1-3 Bardin Ave., Rochester NY.    The home is valued by the Debtor's at $56,000.00.

Impaired/Not Impaired: The Class 1C Claim is impaired under the Plan.

Treatment: The property is in foreclosure and the Debtors do not intend to try to save it. Bank of America has obtained relief from stay and will foreclose on the property is due course. Class 1C will receive nothing under the plan.  The debtors will return the property to the bank by deed in lieu of foreclosure if the bank chooses.

Comments:

### Class 1D - *Secured Claim of Bank of America*

Claim/Collateral: Bank of America has an estimated claim of $45,000.00 which is secured by a first priority deed of trust on the Debtor's rental property at 109 Warner

Street, Rochester NY 14606.    The home is valued by the Debtor's at $34,000.00.

Impaired/Not Impaired: The Class 1D Claim is impaired under the Plan.

Treatment: The property is in foreclosure and the Debtors do not intend to try to save it. Bank of America has obtained relief from stay and will foreclose on the property is due course. Class 1D will receive nothing under the plan.  The debtors will return the property to the bank by deed in lieu of foreclosure if the bank chooses.

Comments:

### Class 1E - *Secured Claim of Bank of America*

Claim/Collateral: Bank of America has an estimated claim of $36,000.00 which is secured by a first priority deed of trust on the Debtor's rental property at 63-65 Avery Ave., Rochester NY.    The property is valued by the Debtor's at $36,000.00.

Impaired/Not Impaired: The Class 1E Claim is impaired under the Plan.

Treatment: The property is in foreclosure and the Debtors do not intend to try to save it. Bank of America has obtained relief from stay and will foreclose on the property is due course. Class 1E will receive nothing under the plan.  The debtors will return the property to the bank by deed in lieu of foreclosure if the bank chooses.

Comments:

### Class 1F - *Secured Claim of IndyMac Bank/Faslo Solutions*

Claim/Collateral: IndyMac Bank/Faslo Solutions, LLC has an estimated claim of $245,620 which is secured by a second priority deed of trust on the Debtor's residence at 3784 Wasatch Avenue, Los Angeles, California 90066.    The home is valued by the Debtor's at $797,000.00 which is less than the amount owed on the first priority lien.

Impaired/Not Impaired: The Class 1F Claim is impaired under the Plan.

Treatment: This Class will be treated as unsecured and will be paid as part of the treatment of Class 3.

Comments:  When the Debtors have completed making the payments required under Section 1129(a)(15) and the discharge is entered, the IndyMac/Faslo lien will be

avoided and removed from the Wasatch Property.  The Debtors' Motion valuing the property at less than the amount owed to the first trust deed holder, Class 1A, was granted by Order entered on January 4, 2010.

**Class 2 -** *Secured Claim of -------- (UNUSED)*

**Class 3** *– Priority Unsecured Claims*

Claims: Certain priority claims specified in Sections 507(a)(3), (4), (5), (6), and (7) of the Bankruptcy Code are required to be classified in the Plan.  Each class of priority claims must be paid in cash in full on the Effective Date of the Plan unless the holders of such claims vote, as a class, to accept deferred payments.  In the present case, the Debtors estimate that there are no such priority claims.  However, if such claims arise they will be treated as follows:

Impaired/Not Impaired:  Class 3 Allowed Priority Claims are not impaired under the Plan.

Treatment:    On the Effective Date, the holders of Class 3 Priority Claims will be paid in cash in full the allowed amount of each Class 3 Priority Claim.

**Class 4** *– Unsecured Claims*

Claims: General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a).  In the present case, the Debtors estimate that there are approximately $361,849.68 worth of Class 4 Claims plus the approximate $246,000.00 owed to IndyMac Bank/Faslo Solutions, LLC. which will be treated as unsecured.

Impaired/Not Impaired: Class 4 Allowed General Unsecured Claims are impaired under the Plan.

Treatment: Holders of General Unsecured Claims will be paid pro-rata the sum of $500 per month for 50 months beginning on April 1, 2011.

**Class of Interest Holders**

**<u>Class 5</u>** – Debtors

The Debtors will retain their ownership interest in their properties.

# F.   MEANS OF PERFORMING THE PLAN

### *1.   Funding for the Plan*

The Debtors will fund their plan from their wages.

### *2.   Management of the Reorganized Debtors*

The Debtors will continue to work in their respective employment positions.

### *3.   Disbursing Agent*

Kenneth R. Farrow shall act as the disbursing agent for the purpose of making the distributions to Class 4 provided for under the Plan.  The Disbursing Agent shall receive 10% of the monthly payment as compensation.

### *4.   Distributions*

Cash payments made pursuant to the Plan shall be in U.S. dollars by checks drawn on domestic bank selected by the Disbursing Agent.  Notwithstanding any other provisions of the Plan, no distributions will be made on account of claims in de minimis amounts of less than $50.00.

Any distributions under the Plan that are unclaimed or undeliverable for a period of six (6) months after distribution thereof shall be revested in the Reorganized Debtors, free of any restrictions thereon, and any entitlement of any holder of any claim to such distribution shall be extinguished and forever barred.

# G.   RISK FACTORS

Since the Plan contemplates payments to certain classes of creditors over time following the Effective Date, it is possible that the Debtors will not have sufficient cash flow to pay all of the obligations created under the Plan.  The Debtors are each employed

and it is possible they might lose their jobs by lay off or termination.  The Debtors believe

that they will be able to meet all of their financial obligations under the Plan but the

projections cannot be guaranteed to be completely accurate.

## H.  OTHER PROVISIONS OF THE PLAN

1.  Executory Contracts and Unexpired Leases

a.  Assumptions

The Debtors do not have any executory contracts or unexpired leases that require

assumption of rejection.

The Debtors reserve the right to modify the Plan to designate additional contracts or

leases to be assumed at any time prior to the hearing on Confirmation of the Plan.

On the Effective Date, each of the unexpired leases and executory contracts so

designated shall be assumed as obligations of the Debtors.  The Confirmation Order shall

constitute an Order approving the assumption of each lease and contract.  If you are a party

to a lease or contract to be assumed and you object to the assumption of your lease or

contract, you must file and serve your objection to the Plan within the deadline for

objecting to the confirmation of the Plan.

b.  Rejections

Any unexpired lease or executory contract not expressly rejected shall be deemed

assumed as of the Effective Date.  The Debtors reserve the right to modify the Plan to

designate certain contracts or leases for rejection at any time prior to the hearing on

confirmation of the Plan.

The order confirming the Plan shall constitute an order approving the rejection of

such leases and contracts.  If you are a party to a contract or lease to be rejected and you

object to the rejection of your contract or lease, you must file and serve your objection to

the Plan within the deadline for objecting to the confirmation of the Plan. See Disclosure

Statement for the specific date.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM

DEBTORS' FIRST AMENDED
DISCLOSURE STATEMENT

ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS THIRTY DAYS AFTER THE EFFECTIVE DATE.  Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

## 2.  CHANGES IN RATES SUBJECT TO REGULATORY COMMISSION APPROVAL

The Debtors are not subject to governmental regulatory commission approval of their rates.

## 3.  RETENTION OF JURISDICTION.

The Court will retain jurisdiction to the fullest extent provided by law.

## I.  TAX CONSEQUENCES OF THE PLAN

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtors.  The Proponents CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules that make it difficult to state completely and accurately all the tax implications of any action.

The Debtors do not anticipate that confirmation of the Plan will have a significant or material effect on their tax liability.  The Debtors make no representations regarding the potential tax consequences to creditors.

## IV.  CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS

PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan.  Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible.  These requirements are <u>not</u> the only requirements for confirmation.

## **A.  WHO MAY VOTE OR OBJECT**

*1.  Who May Object to Confirmation of the Plan*

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

*2.  Who May Vote to Accept/Reject the Plan*

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

a.  *What Is an Allowed Claim/Interest*

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim.  When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

**THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE IS**

**December 30, 2009.**  A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed.  A claim is deemed allowed if (1) it is scheduled on the Debtors' schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim.  An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest. Consult Exhibit C to see how the Debtors have characterized your claim or interest.

              b.  *What Is an Impaired Claim/Interest*

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is <u>impaired</u> under the Plan.  A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.  For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Proponent believes that only Classes 1(a) through 1(g) and 3 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.  The Proponents believe that class 2 is unimpaired and that holders of claims of that class therefore do not have the right to vote to accept or reject the Plan.  Parties who dispute the Proponents' characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponents have incorrectly characterized the class.

              *3.  Who is <u>Not</u> Entitled to Vote*

The following four types of claims are <u>not</u> entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan.  Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority

pursuant to Code sections 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code.  Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.  EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4.   *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5.   *Votes Necessary to Confirm the Plan*

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in this Article.

### 6.   *Votes Necessary for a Class to Accept the Plan*

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan.  A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the shareholders of such class that actually voted, voted to accept the Plan.

### 7.   *Treatment of Non-accepting Classes*

As noted above, even if <u>all</u> impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code.  The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown."  The Code allows

the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets

all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan

does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that

has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case

law.

  *8.  Request for Confirmation Despite Non-acceptance by Impaired Classes*

The Proponents will ask the Court to confirm this Plan by cramdown on any

impaired classes if any of these classes do not vote to accept the Plan.

## B.  LIQUIDATION ANALYSIS

Another confirmation requirement is the "Best Interest Test," which requires a

liquidation analysis.  Under the Best Interest Test, if a claimant or interest holder is in an

impaired class and that claimant or interest holder does not vote to accept the Plan, then

that claimant or interest holder must receive or retain under the Plan property of a value

not less than the amount that such holder would receive or retain if the Debtors were

liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee.

Secured creditors are paid first from the sales proceeds of properties on which the secured

creditor has a lien.  Administrative claims are paid next.  Next, unsecured creditors are

paid from any remaining sales proceeds, according to their rights to priority.  Unsecured

creditors with the same priority share in proportion to the amount of their allowed claim in

relationship to the amount of total allowed unsecured claims. Finally, interest holders

receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm this Plan, the Court must find that all creditors

and interest holders who do not accept the Plan will receive at least as much under the Plan

as such holders would receive under a Chapter 7 liquidation. The Plan Proponent maintains

that this requirement is met here for the following reason:

In a Chapter 7 case, a trustee is appointed and entitled to compensation from the bankruptcy estate in an amount not to exceed 25% on the first $5,000 of all moneys disbursed, 10% on any amount over $5,000 but less than $50,000, 5% on any amount over $50,000 but not in excess of $1 million, and 3% on all amounts over $1 million.  In this case, the trustee's compensation is estimated to equal $9,500.00.

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive under a Chapter 7 liquidation.  (This information is provided from the Debtor's books and records.)

**LAW OFFICES**
M. Jonathan Hayes

DEBTORS' FIRST AMENDED
DISCLOSURE STATEMENT

**ASSETS VALUE AT LIQUIDATION VALUES: (as of December 1, 2009)**

CURRENT ASSETS
a.  Cash on hand                                          $ 10,000
b.  Personal Property in residence (fully exempt)        $ -0-
c.  Vehicles:  2004 Ford Expedition                      $ 15,000

TOTAL CURRENT ASSETS                                     $  25,000

FIXED ASSETS
    a.  Real Property located at 3784 Wasatch Ave., Los Angeles,   $ 797,000
       CA
    b.  Real Properties located in Rochester, NY (underwater and  $ 161,000
       to be abandoned)

TOTAL FIXED ASSETS                                       $ 958,000

OTHER ASSETS
    a.  Ownership in Baja Fresh Restaurant           $   50,000
    b.  2% Ownership interest in Keller Williams office    $   10,000
    c.  25% ownership of Silva Bridgewater           $   -0-
    d.  Investment in Oil Wells (exempt under wildcard)   $   15,000

TOTAL OTHER ASSETS                                       $   75,000
                                                         =========
**TOTAL ASSETS AT LIQUIDATION VALUE**                    $1,058.000

**Less:**
Secured creditor's recovery:                             $1,269,618

**Less:**
Chapter 7 trustee fees and expenses                      $     5,000
**Less:**
Chapter 11 administrative expenses                       $   10,000
**Less:**
Priority claims,                                         $   79,000
excluding administrative expense claims

                                                         =========
(1) Balance for unsecured claims                         $    0

(2) Total amount of unsecured claims                     $   606,000

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CH. 7 LIQUIDATION:    = 0%**

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE OR RETAIN UNDER THIS PLAN:    = 1%**

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN |
|---|---|
| Administrative Claims | 100% |
| Priority Tax Claims | 100% |
| Class 1(a) – IndyMac Bank | 100% |
| Class 1(b) – Bank of America | Prop returned |
| Class 1(c) – Bank of America | Prop returned |
| Class 1(d) - Bank of America | Prop returned |
| Class 1(e) Bank of America | Prop returned |
| Class 1(f) – Faslo Solutions | 0% |
| Class 2 Unused | na |
| Class 3 Unsecured Creditors | 1.1% |
| Class 4 Debtors | Retain their interest |

## 1. FEASIBILITY

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtors will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date. The only cash required on the Effective Date is payment of the Debtors' attorneys fees which will is estimated to be $2,000 to $3,000 (plus the payment of $500 per month under the plan).

The Debtors believe that they will have sufficient cash on hand in order to meet their obligations under the Plan.

The second aspect considers whether the Debtors will have enough cash over the

life of the Plan to make the required Plan payments.

The Debtors has provided a budget of their Projected Disposable Income on Exhibit B.

YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL STATEMENTS.

## V.  EFFECT OF CONFIRMATION OF PLAN

### 1.  DISCHARGE

This Plan provides that the Debtors shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. § 1141. However, the discharge will not discharge any liability imposed by the Plan.  The discharge will not be entered until the Debtors have made all of the payments provided for under the plan.

### 2.  REVESTING OF PROPERTY IN THE DEBTORS

Except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtors.

From and after the Effective Date, the Debtors may operate and may use, acquire, and dispose of property, and compromise and settle any claims or causes of actions without supervision or consent of the Bankruptcy Court and are free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

The Debtors shall have, retain, reserve and be entitled to assert all claims, causes of action, rights of setoff and other legal or equitable defenses that the Debtors had immediately prior to the Petition Date as fully as if the Debtors' bankruptcy case had not been commenced; and all of the Debtors' legal and equitable rights respecting any such claim which is not specifically waived, extinguished, relinquished or transferred by the

Plan may be asserted after the Effective Date.

### 3.  MODIFICATION OF PLAN

The Proponent may modify the Plan at any time before confirmation.  However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated <u>and</u> (2) the Court authorizes the proposed modifications after notice and a hearing.

### 4.  POST-CONFIRMATION EMPLOYMENT AND COMPENSATION OF REORGANIZED DEBTORS' PROFESSIONALS

After the Confirmation Date, the Reorganized Debtors may employ, without notice, hearing, or order of the Bankruptcy Court, such attorneys, accountants, and other professionals (the "Post-confirmation Professionals") as it may desire to render services on such terms as it deems reasonable.  With respect to services rendered by the Post-confirmation Professionals, the Reorganized Debtors shall be authorized to pay for such services, related costs, and expenses without notice, hearing, or order of the Bankruptcy Court

### 5.  POST-CONFIRMATION STATUS REPORT

Within 120 days of the entry of the order confirming the Plan, the Reorganized Debtors shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice.  Further status reports shall be filed every 120 days and served on the same entities.

### 6.  POST-CONFIRMATION CONVERSION/DISMISSAL

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the Court orders, the case converted to Chapter 7 after the Plan is confirmed, then all

property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7, estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances.  The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

## 7.  FINAL DECREE

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Reorganized Debtors, or other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.

Date:   March 12, 2010

Michael and Denise Freed, Debtors and Debtors-in-Possession
Name of Plan Proponent

/s/  M. Jonathan Hayes

Signature of Attorney for Plan Proponent

M. Jonathan Hayes
Attorney for Plan Proponent

<u>SUPPORTING DECLARATION</u>

I, DENISE FREED, declare as follows:

1.    I have personal knowledge of the facts set forth below and, if called to testify,
would and could competently testify thereto.

2.    I am one of the Debtors' in this case.

3.    I have reviewed the information within the Disclosure Statement, including all
financial information.

4.    I believe that all information contained in the Disclosure Statement is true and
correct and fairly presented, to the best of my knowledge.

I declare under penalty of perjury under the laws of the United States of
America that the foregoing is true and correct.

Executed this __12th___ day of March, 2010, at Los Angeles, California.

_____
Denise Freed

DEBTORS' FIRST AMENDED
DISCLOSURE STATEMENT

1

## EXHIBIT A - LIST OF ALL ASSETS

2

3

| | | |
|---|---|---|
| Residence at 3784 Wasatch Ave., Los Angeles | | FMV $ 797,000<br>Liens: 1,269,618 |
| Rental Properties (4) in Rochester, NY | | FMV  $161,000<br>liens |
| Cash in Bank | | 10,000 |
| Household Goods & Furnishings | All claimed exempt | FMV $3,500 |
| Clothing & Jewelry | All claimed exempt | FMV  $2,650 |
| Northwest Mutual Life Ins, CSV $3,748 (exempt) | All claimed exempt | CSV  $3,748 |
| Education IRA | All claimed exempt | $25,000 |
| Ownership in Baja Fresh | | FMV $50,000 |
| Ownership Interest in Keller Williams Office (2%) | | FMV $10,000 |
| Ownership Interest in Silva Bridgewater | | -0- |
| Oil Wells | Claimed exempt under wildcard | $15,000 |
| Office Equipment | All claimed exempt | FMV    300 |
| Total | | $1,083,300 |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
M. Jonathan Hayes

DEBTORS' FIRST AMENDED
DISCLOSURE STATEMENT

## EXHIBIT B – DEBTOR'S PROJECTED DISPOSABLE INCOME

|  | Actual 2007 | Actual 2008 | Estimated 2009 | Projected 2010 | Projected 2011 |
|---|---|---|---|---|---|
| Wages | 80,100 | 75,000 | 169,224 | 169,224 | 169,224 |
| Interest & Divs | 162 | 290 | 0 | 0 | 0 |
| Capital Gains | 71,968 | -3,000 | -3,000 | 0 | 0 |
| Rental Income | 30,221 | 74,788 | 35,000 | 0 | 0 |
| IRA Distributions | 88,455 | 4,073 | 0 | 0 | 0 |
| Other gains losses | 0 | -4,626 | 0 | 0 | 0 |
| Total Net Income | 270,906 | 146,525 | 201,224 | 169,224 | 169,224 |
| Total Income Taxes | 51,725 | 9,275 | 30,000 | 18,500 | 18,500 |
| Income after Tax | 219,181 | 137,250 | 171,224 | 150,724 | 150,724 |
| Income Per month | 18,265 | 11,438 | 14,269 | 12,560 | 12,560 |

| | |
|---|---|
| Mortgage | 4,549 |
| Prop Taxes (Included in Mort) | 0 |
| Elec/heating | 237 |
| Water/sewer | 538 |
| Phone | 186 |
| Cable/Internet | 80 |
| Home main. | 100 |
| Food | 800 |
| Clothing | 150 |
| Dry cleaning | 60 |
| Med/Den exp. | 50 |
| Recreation | 100 |
| Charit. Contr. | 50 |
| Homeown. Ins. | 157 |
| Life Insur. | 88 |
| Car Insur. | 320 |
| Auto | 586 |
| Transportation | 250 |
| Tuition/child care | 1,000 |
| Miscellaneous | 200 |
| **TOTAL** | 9,501 |
| | |
| **IRS** | 1,012 |
| **FTB** | 417 |
| **Class 1 - arrearage** | **833** |
| **Class 3** | **500** |
| **UST** | **217** |
| Total Plan Payments | 2,979 |
| Total outgo | 12,480 |

LAW OFFICES
M. Jonathan Hayes

DEBTORS' FIRST AMENDED
DISCLOSURE STATEMENT

**EXHIBIT C - LIST OF CREDITORS/CLAIMS**

<u>**TYPE OF CLAIM; CREDITOR**</u>                    <u>**AMOUNT OF CLAIM**</u>

### CLASS 1 – SECURED CLAIMS

| | |
|---|---|
| Bank of America | $35,279.38 |
| Bank of America | $64,179.58 |
| Bank of America | $45,000.00 |
| Bank of America | $36,000.00 |
| IndyMac Mortgage Services | $807,919.00 |
| Faslo Solutions | incl in Class 3 |

### CLASS 3 – PRIORITY UNSECURED CLAI MS

**none**

### CLASS 4 – GENERAL UNSECURED CLAIMS

| *CREDITOR* | *PROOF OF CLAIM NO. & AMOUNT* | *SCHEDULE* | *ALLOWED* |
|---|---|---|---|
| American Express | (6) $4,869.02 | $4,291.68 | |
| Anna Levin | (8) $7,500.00 | $7,500.00 | |
| Wells Fargo | (3) $1,284.89 | $668.10 | |
| Wells Fargo | | $354.34 | |
| Citicard | | $18,156.60 | |
| Countrywide | | $2,837.06 | |
| Enhanced Recovery Corp. | | $453.20 | |
| Geraldine Nakatani | (16) $20,000.00 | $20,000.00 | |
| Citibank | | $29,842.78 | |
| Citibank | | $12,747.94 | |
| Jackie Assini | | $20,500.00 | |

LAW OFFICES
M. Jonathan Hayes

DEBTORS' FIRST AMENDED
DISCLOSURE STATEMENT

| | | |
|---|---|---|
| Lisa Kodmur | | $7,500.00 |
| Jay Solnit & Overbay, DDS | | $1,561.42 |
| GE Capital | | $653.50 |
| Neiman Marcus | (10) $787.42 | $716.81 |
| O.J. Freed | | $100,000.00 |
| Wells Fargo Bank | (4) $49,747.92 | $42,214.99 |
| Richard Rogg | | $45,000.00 |
| LVNV/Sears/Citibank | (9) $15,365.70 | $14,219.23 |
| Arrow Financial Systems | | $1,501.59 |
| Shirley Kodmur | | $15,000.00 |
| The Village Community Assoc. | | $3,919.52 |
| Winn Law/Discover Card | (7) $11,860.92 | $12,210.92 |
| Faslo Solutions | | $245,620.11 |
| IRS | ( 1) $13,708 | |
| FTB | (5)    $3,811.37 | |

LAW OFFICES
M. Jonathan Hayes

DEBTORS' FIRST AMENDED
DISCLOSURE STATEMENT

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 9700 Reseda Blvd., Ste 201, Northridge, CA 91324.

The foregoing document described as **DEBTORS' DISCLOSURE STATEMENT DESCRIBING DEBTORS' CHAPTER 11 PLAN**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **0 3/17/10** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Russell Clementson     russell.clementson@usdoj.gov
- M Jonathan Hayes     jhayes@polarisnet.net
- Cassandra J Richey     cmartin@pprlaw.net
- Ramesh Singh     claims@recoverycorp.com
- United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov
- Darlene C Vigil     darlenev@bdftw.com, cdcaecf@bdftw.com

☐ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:** On **0 3/17/10,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

**Hon. Samuel L. Bufford**

US Bankruptcy Court

Central District – LA Branch

255 E. Temple Street, Suite 1582

Los Angeles, CA 90012

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ------**09** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

**LAW OFFICES**
M. Jonathan Hayes

DEBTORS' FIRST AMENDED
DISCLOSURE STATEMENT

1    I declare under penalty of perjury under the laws of the United States of America that the
2    foregoing is true and correct.

3    **3/17/10**                    Rosario Zubia                    /s/ Rosario Zubia
     *Date*                            *Type Name*                    *Signature*
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEBTORS' FIRST AMENDED
DISCLOSURE STATEMENT